UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: | . Chapter 11 |
|  | . |
|  | . Case No. 23-11161(JKS) |
| PRIME CORE TECHNOLOGIES, | . |
| INC., et al, | . |
|  | . |
|  | . 824 Market Street |
|  | . Wilmington, Delaware 19801 |
| Debtors. | . |
| . . . . . . . . . . . . . . . | . Thursday, November 13, 2025 |
| PCT LITIGATION TRUST, | . |
|  | . Adv. Proc. No. See Attached |
| vs. | . Schedule 1 for Case List |
|  | . |
| VARIOUS DEFENDANTS. | . |
| . . . . . . . . . . . . . . . | |

TRANSCRIPT OF PRETRIAL CONFERENCES
BEFORE THE HONORABLE J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Stillman Digital and
DeFi Technologies:            Donna L. Culver, Esq.
                             MORRIS, NICHOLS, ARSHT
                              & TUNNELL, LLP
                             1201 North Market Street
                             16th Floor
                             Wilmington, Delaware 19899

(Appearances Continued)

Audio Operator:              Electronically Recorded
                             by Sean Moran, ECRO

Transcription Company:       Reliable
                             1007 N. Orange Street
                             Wilmington, Delaware 19801
                             (302)654-8080
                             Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES VIA ZOOM:   (On the Record)

For the Plan
Administrator:                    Donald J. Detweiler, Esq.
                                  WOMBLE BOND DICKINSON (US), LLP
                                  1313 North Market Street
                                  Suite 1200
                                  Wilmington, Delaware 19801


For Plaintiff PCT
Litigation Trust:                 David R. Hurst, Esq.
                                  MCDERMOTT, WILL & SCHULTE, LLP
                                  The Brandywine Building
                                  1000 North West Street
                                  Suite 1400
                                  Wilmington, Delaware 19801

                                  Greer Griffith, Esq.
                                  MCDERMOTT, WILL & SCHULTE, LLP
                                  One Vanderbilt Avenue
                                  New York, New York 10017

INDEX

PAGE

Summons and Notice of Pretrial Conference in an                8
Adversary Proceeding, PCT Litigation Trust v. Jiles,
et al., Adv. Pro. No. 25-52026 (JKS)
[Adv. Pro. No. 7 - filed September 10, 2025]

Summons and Notice of Pretrial Conference in an               11
Adversary Proceeding, PCT Litigation Trust v. Stillman
Digital, Inc. f/k/a Stillman Digital LLC, et al.,
Adv. Pro. No. 25-51945 (JKS)
[Adv. Pro. No. 4 - filed September 11, 2025]

(Proceedings commence at 11:01 a.m.)

THE ECRO:  Counsel, you are live in the courtroom and the hearing is about to begin.  Please remember to state your name for the record when you speak and every time you speak.  Please stay muted if you're not speaking to the Judge, so the Judge can concentrate on the parties that are presenting at the time.  Thank you.

THE COURT:  Good morning, everyone.  This is Judge Stickles.  We're on the record in Prime Core Technologies, Case Number 22-11161.

I'll turn the virtual podium over to the trust's counsel.

MR. DETWEILER:  Good morning, Your Honor.  And may it please the Court, Donald Detweiler of Womble Bond Dickinson on behalf of the trust admin -- trustee and plan administrator.

Also on the line are counsel from McDermott, Will & Emery [sic], David Klauder and ASK, as well, who also represent the litigation trust and plan administrator in various matters.

We appreciate your time this morning, Your Honor, and thank you and your staff for -- I know there was some difficulty with the binders, there was a lot of volume that needed to be delivered.  We apologize for any delay in getting that to you, but we certainly appreciate your staff's

cooperation and help in getting all the documents to you.

There are five, I'll say "subcategories" that we have before the Court today:

The resolved matters, which are in I of the agenda;

Adjourned matters;

Matters under certification;

Matters that were going to be going forward;

And the adversary pretrials that were going forward.

Your Honor, we're at your discretion as to how you would like to proceed.  But the resolved matters, adjourned matters, matters under certification, and matters going forward, which would include Items Number 1 through 20 on the agenda, have either all been resolved or are now resolved by virtue of the Court's orders that have been entered on the matters.

So I don't know if you have any questions on Items Number 1 through 20, but we'd be happy to go -- ask -- answer any questions you may have and then go to the pretrials.

THE COURT:  Mr. Detweiler -- and please correct me if I'm wrong because this case is becoming a bit of a management challenge -- but are there any orders that were filed that -- under certification of counsel or certificate of no objection that were not entered, that were not seal orders, that were filed with respect to, I believe, three

motions that were just filed?  I just want to make sure I haven't missed anything.

MR. DETWEILER:  Yeah, I --

THE COURT:  And it is becoming a little more complex with four different parties involved, in terms of the trust.

MR. DETWEILER:  Yeah.

THE COURT:  So I just want to make sure I've addressed everything because I had --

MR. DETWEILER:  Yes.

THE COURT:  -- going forward two pretrials.

MR. DETWEILER:  Yeah.  So, Your Honor, I believe -- I checked -- I know the agenda, the most recent agenda that was filed at Item Number 20, which was an adversary handled by Mr. Klauder's office, and I have confirmed that an order was entered on that --

THE COURT:  Uh-huh.

MR. DETWEILER:  -- Item Number 20 day.  And that was -- order was entered at Docket Number 11 in that adversary.

I don't know if there were any orders, and I'll ask counsel from McDermott or ASK if there are any matters that they have that could be responsive to Your Honor's request. But I believe all the orders that we have requested have been entered, Your Honor.

THE COURT:  Okay.  Thank you, Mr. Detweiler.

MR. DETWEILER:  Mr. Hurst or Mr. Klauder?

THE COURT:  Good morning, Mr. Hurst.

MR. HURST:  Yes.  Good morning, Judge.  A pleasure to see you this morning.

Your Honor, you have entered all of the orders on the McDermott matters.

THE COURT:  Okay.

MR. HURST:  Thank you for that.

THE COURT:  All right.  Certainly.

Anyone else?  I think they've all been ordered.

I understand there's a pretrial with respect to Stillman and Jiles, a status conference, I believe, are the only two things left.  Is that correct?

MR. DETWEILER:  I believe that is correct.  I'll be handling the Jiles matter, Your Honor.

THE COURT:  Okay.

MR. DETWEILER:  And Stillman, I'm not sure who's handling that one, if that's you, Mr. Hurst or if it's Mr. Brown.

MR. HURST:  It will be Ms. Griffith, who's on the line for McDermott.

THE COURT:  Okay.  This is --

MR. DETWEILER:  Okay.

THE COURT:  -- competing pretrials, correct?

MR. HURST:  Yes, Your Honor.

THE COURT:  Okay.

MR. DETWEILER:  So, Your Honor, if I can, I'll go first on the Jiles matter --

THE COURT:  Okay.

MR. DETWEILER:  -- Number 30, just to give you an update if that's okay.

THE COURT:  Certainly.

MR. DETWEILER:  Thank you, Your Honor.  I appreciate that.

Your Honor, with regard to -- we call this the "D&O litigation" --

THE COURT:  Uh-huh.

MR. DETWEILER:  -- the Jiles matter.  Mr. Jiles has filed a motion to dismiss.  The parties have complete -- on the Jiles motion, have completed briefing and have requested oral argument.

The -- we have entered into a stipulation with -- which we call the "non-Jiles defendant" -- "non-Jiles defendants," and they had an extension to answer.  We will be filing a stipulation with the Court with regard to a briefing schedule on their anticipated motions to dismiss.

In addition, we are in continuing discussions with the parties regarding a scheduling order.  We were hopeful to provide Your Honor with a briefing schedule and a scheduling

order together.  That doesn't appear that that's going to happen.  So what we propose to do for the Court is:

One, give you an order on a briefing schedule on the non-Jiles defendants' motions to dismiss.

We will work to see if we can reach a consensus on a scheduling order.  If there is no consensus, we have adjourned the pretrial conference on the Jiles matter for December 3rd.

THE COURT:  Okay.  So I should be looking for at least a scheduling order on the motion to dismiss for the non-Jiles defendants.

MR. DETWEILER:  That's correct, Your Honor.

THE COURT:  Okay.

MR. DETWEILER:  So we just wanted to make sure you didn't -- oftentimes, as you know, we put them both together. We were not able to do that in this case.  So we'll have a stipulation or an order on the briefing schedule on the non-Jiles, and then the scheduling order on the case, if we can't get it resolved for December 3rd.

THE COURT:  Okay.  All right.  Thank you, Mr. Detweiler.

MR. DETWEILER:  Okay.  Thank you, Your Honor.  And welcome back to work.  Not that you stopped.

(Laughter)

THE COURT:  Yes.  I have to say, Mr. Detweiler,

that our entire court staff has been very committed to working throughout this process, and we're very grateful to them, so --

MR. DETWEILER:  And we are grateful for them, as well, Your Honor, and their continued work during that difficult time.

THE COURT:  Okay.  Mr. Detweiler, you will be hearing from the Court because I believe you have a hearing on January 13th that we have to move due to a conflict.  So, while everybody is on the -- I see there are 28 people on Zoom.  That January date is going to get moved.

MR. DETWEILER:  Okay.

THE COURT:  So Mr. Lugano --

MR. DETWEILER:  Well, we'll --

THE COURT:  -- will reach out and coordinate with the various counsel for the trust.  Okay?

MR. DETWEILER:  Great.  Thank you, Your Honor, very much.

THE COURT:  Thank you.

MR. DETWEILER:  So that concludes the Jiles matter. And I'll turn it over to Ms. Griffith.

THE COURT:  Okay.  Great.  Thank you

MR. DETWEILER:  Thank you, Your Honor, very much.

THE COURT:  Good morning, Ms. Griffith.

MS. GRIFFITH:  Good morning, Judge.

So, Your Honor, I'm here to talk about the dispute relating to the scheduling orders that are in place with the Trust v. Stillman Digital, Inc., formerly known as Stillman Digital, LLC, and DeFi Technologies, Inc., adversary proceeding --

THE COURT:  Uh-huh.

MS. GRIFFITH:  -- docketed at Number 25-51945.

The trust views this as a rather simple issue.  The proposed cash management order that we submitted to the Court adheres to this Court's specific directives in this case regarding the form of the cash management orders.  The format we have submitted and we have followed has been approved by this Court in these adversary proceedings approximately ten times now.  We do not see a reason to deviate from the model and the format that this Court has previously reviewed and endorsed.

That said, we are, of course, willing to collaborate with defendant on coming to a consensus on the differences with respect to a time line and specific deadlines, provided they fit within the framework and the format the Court has already approved and endorsed.

THE COURT:  Okay.  Well, how about if I hear from Ms. Culver, who is in the courtroom?  Good morning.

MS. CULVER:  Okay.  I didn't get the memo that the hearing had been changed to Zoom, so ...

THE COURT:  The Court is always open.

(Laughter)

THE COURT:  You're -- it's not issue at all.

MS. CULVER:  Good morning, Your Honor.  Donna Culver of Morris, Nichols, Arsht & Tunnell on behalf of Stillman Digital and DeFi Technologies.

Your Honor, I appreciate that the trust has -- have a form of scheduling order that they selected, entered in other adversary proceedings.  My clients were not parties to those adversary proceedings.

We proposed a scheduling order based on the general form of order that's been in place and has worked fine in this jurisdiction for 20 years, which ties deadlines to the answer.

In particular, the trust's scheduling order would have discovery close within 90 days after an answer is filed.  My clients have filed a motion to dismiss.  They may not want to participate in discovery, or at least take discovery, including depositions, until that's decided because it could eliminate discovery entirely.  And so, in particular, that ninety-day deadline, I think is problematic.

THE COURT:  What did you propose?  And I have them both.  But I have to say, I looked at the blackline, it's not very helpful.  I mean, and that's just because of the different forms.

13

MS. CULVER:  Correct.

THE COURT:  But I'm more concerned about the timing.

MS. CULVER:  We had proposed a fact discovery cutoff of 180 days after --

THE COURT:  A ruling?

MS. CULVER:  -- after the answer is filed --

THE COURT:  Oh, okay.

MS. CULVER:  -- which is what comports with the general order.

THE COURT:  Uh-huh.

MS. CULVER:  And the scheduling order is actually based off of Judge Dorsey's form, which I think was taken from the original general order that was entered back in 2004 or 2005.

So the answer deadline, in particular, is problematic.

The trust did, at our request, insert a mediation date, which would also -- with the ninety-day discovery cutoff that they're proposing, would have mediation occur long after fact discovery is complete.  Typically, I believe that's done at the time fact discovery closes, so that you don't have to get into expert discovery before you get to mediation.

THE COURT:  Okay.  Go ahead.  Those are the --

those are the gating issues?

MS. CULVER:  Those are the gating issue.

As I said, I -- their form seemed somewhat complicated because it's, if you file a motion to dismiss, then you're in -- you're -- you have these deadlines; if you don't, you have these deadlines.  We think the form we proposed is more streamlined and, as I say, consistent with the general order.  So we would ask that that be entered.

MS. GRIFFITH:  Your Honor, may I respond?

THE COURT:  Yes.

MS. GRIFFITH:  Thank you, Your Honor.

In the case management order that the trust proposed, we actually said that discovery would be complete 120 -- 180 days after the filing of an answer to the complaint or the filing of the last answer to an amended complaint, whichever is later.  So it seems like we may be aligned on that point, which is in our proposed CMO that we submitted.

The trust's position, as you're familiar with at this point, now that we've handled ten of these CMOs, is that discovery should be open while the motions to dismiss are proceeding.  The trust just did not want to tie the close of fact discovery until after the motion to dismiss is decided or after an answer is filed, which is set forth in the CMO.

On the mediation point, we believe that the local

rules and the standing orders in this court are clear on how mediation should be conducted, and that mediation does not have to commence until after the answer is filed.  That being said, the trust is willing and has been engaging in voluntary mediation with interested parties before that date, which we have expressed to defendants' counsel in this case.

THE COURT:  So I'm -- so fact discovery, let's just be clear, that's going to be 180 days after an answer, whether it's the answer or an amended answer.  Okay?

MS. CULVER:  Okay.  It's discovery cutoff, which is:

"The parties shall complete their production of documents within 90 days after the filing of an answer."

It's 3(c)(iii) is the 90 days.

THE COURT:  Bear with me a second.  You said 3?

MS. CULVER:  In their proposed --

THE COURT:  Oh, wrong --

MS. CULVER:  -- case management order.

THE COURT:  I'm looking --

MS. GRIFFITH:  I --

THE COURT:  -- the wrong one.

MS. GRIFFITH:  Yes, I can read it into the record, so it's clear.

THE COURT:  That's okay.  I'll look at it.  3(c)?

MS. CULVER:  (iii).

(Pause in proceedings)

THE COURT:  So what is the ask with respect to timing here?

MS. CULVER:  The ask was really that we adhere to the general scheduling order.  There's just a lot of stuff in there -- "stuff" I say -- a lot of stuff in their case management order that we don't typically see in case management orders --

THE COURT:  I know, it's --

MS. CULVER:  -- here.

THE COURT:  It's intense, yeah.

MS. CULVER:  And it's, I think, a little difficult to follow.

(Pause in proceedings)

MS. GRIFFITH:  Your Honor, the way that 3(c)(iii) is set out is that there's a difference with the time for the close of fact discovery for parties that file a motion to dismiss versus parties that file an answer to the complaint. Regardless, what this sets forth is that discovery will be ongoing after the initial conference takes place between the parties.

THE COURT:  Right.  And her point is why am I doing discovery if the Court is sitting on a motion to dismiss. And I guess my question to the trust is:  Why would you

proceed with discovery during the pendency of a motion to dismiss?

MS. GRIFFITH:  Correct.

And Your Honor, this is a position that the trust has raised with you multiple times previously, and your position -- and we've been maintaining that that is the accurate position -- is that, if a party wanted to stay discovery, they would have to file a formal motion to stay discovery while the motion to dismiss is pending.  If not, there's no reason to delay these litigations indefinitely while the motion to dismiss is pending.  We think it's important to keep litigating these cases, so there's no a backlog, and here's no reason to delay discovery in the meantime.

THE COURT:  Well, I'm thinking out loud because I have multiple of these under advisement right now, right?  And the trust is seeking to stay other adversaries while it pursues certain litigation.  So I guess I'm trying to be practical here about parties' expenditure and time while a matter is under advisement that could, in fact, be dispositive.

MS. GRIFFITH:  I just --

THE COURT:  And the case is becoming more and more clear, I guess, the more I'm seeing, the more motions that are being filed.  And so I'm -- to the extent that I might

have previously said proceed, I guess, given what I have is, essentially, an oral request in front of me, why wouldn't I grant it?

MS. GRIFFITH:  Your Honor, case law is pretty clear that discovery stays require a movant to establish good cause to stay discovery.  They have to do a demonstration of a clear case of hardship or inequity on a particular defendant. It's well settled in this court and in the Third Circuit that the filing of a motion to dismiss is not, in and of itself, good cause to stay discovery, and that does not meet the good cause standard.

MS. CULVER:  Your Honor, if I may?  The briefing schedule that the trust has proposed wouldn't even have the motion briefed until February 6th, so it's going to be -- so it was -- their position was let's take a leisurely time to brief the motion to dismiss, we were fine with that.  This is a three-hundred-thousand-dollar case, it's not practical to take discovery while there is a dispositive motion pending.

I mean, I do a lot of preference work.  I don't do a lot of preference work in the cryptocurrency area.  So there are some interesting legal issues that I think are going to be presented by these motions to dismiss.  And it makes no practical sense, I don't think, to be proceeding with discovery while those issues are in front of Your Honor.

THE COURT:  Your -- the trust's response date is

February?

MS. CULVER:  The trust's response date is January 16th, to the motion to dismiss, and then the reply is February 6th.  That's in Number 2 in our their proposed case management plan and scheduling order.

THE COURT:  I mean, I'm happy to hear from the trust, but I am inclined, under the facts of this particular case, to delay discovery, given the motion to dismiss.

MS. GRIFFITH:  Your Honor, my concern is that we are looking to have a uniform and consistent approach for these cases.  It's in the trust's best interest to move them forward.  Discovery is beneficial in these actions, so that there is not unnecessary delay.  I'm happy to go through some cases with you.

THE COURT:  Well, here's my question:  How is it beneficial in this case, given a pending motion to dismiss?

MS. GRIFFITH:  So that the case is not delayed with discovery.  What we don't want to have happen is for discovery to not start until the motion to dismiss is fully briefed and decided.  It's pushing the prosecution and litigation of this case off --

THE COURT:  Of course it is.

MS. GRIFFITH:  -- for technically --

THE COURT:  Just like you're pushing off the prosecution of cases with end users, while you do litigation

with respect to integrators.

MS. GRIFFITH:  Correct.

And the reason for doing that with the end users was to hopefully avoid there being a situation where there's duplicative issues between the integrator and the end user actions.  If the actions with the integrators are fully resolved, there may be no need to pursue the end user action.  In this case, there is a need to pursue the integrator actions.  There is no need to delay or to wait to litigate and push these cases forward while a motion to dismiss is pending.

THE COURT:  Okay.  So the alternative is the Court pushes out the discovery.

MS. GRIFFITH:  We are fine with that, Your Honor.

THE COURT:  So the --

MS. GRIFFITH:  We think that's appropriate.  Our position has been, from the beginning, and as set forth in the ten CMOs ordered, we just want the discovery process to get started.

THE COURT:  Have you issued discovery in this case?

MS. GRIFFITH:  I don't believe in this case yet --

MS. CULVER:  No.

MS. GRIFFITH:  -- Your Honor.  We have issued discovery in other cases, in other adversary proceedings.

THE COURT:  My concern here --

MS. GRIFFITH:  Our goal here --

THE COURT:  -- is that -- I understand what the trust's position is, but I also understand what the defendants' positions are who filed motions to dismiss who may be case dispositive, who are going to spend time doing discovery.

MS. GRIFFITH:  I understand, Your Honor.  And I think the appropriate way to handle that would be, as you instructed in prior hearings, which is to have --

THE COURT:  Which prior hearing are we referring to?  Because facts make law, and I just want to make sure I'm aware of which one you're talking to because I only recall two other discussions on pretrials, so I just want to make sure I know which one we're talking about.

MS. GRIFFITH:  Sure.  The September 9th, 2025 hearing, you said, Your Honor:

"I am not going to stay discovery.  I would entertain a motion to stay discovery if and when a motion to dismiss is filed and fully briefed and ripe for adjudication."

THE COURT:  Isn't that --

MS. GRIFFITH:  "I believe" --

THE COURT:  -- what we --

MS. GRIFFITH:  "-- that is" --

THE COURT:  -- have here?

MS. GRIFFITH:  "-- appropriate" --

THE COURT:  We have a motion to dismiss pending.

MS. CULVER:  That's correct.

MS. GRIFFITH:  Right.  And we have a motion to dismiss pending.  And I believe it would be appropriate to require defendants' counsel to file a formal motion to stay, which the trust could respond to, setting forth the specific reasons for why they feel they've established good cause and are an exception to the rule that discovery should not proceed while a motion to dismiss is pending.

I believe this should be a case-by-case decision while motions dismiss are pending.  And if defendants believe it's appropriate, they could file a formal motion to stay in that specific adversary proceeding, setting forth their reasons, based on the facts of their case.

THE COURT:  I don't remember what case, what adversary proceeding that was.  These are all very different cases, as I dig into them.  But I'm happy to delay the pretrial on this one, so I can go focus on the motion to dismiss.  But I will tell you I have a long list of adversaries pending in various cases, so -- and your response isn't even due until January in this one.

I -- the -- I understand what I previously said.  I don't remember in the context of what that factual case was.  But the whole argument we're hearing right here is this is a

three-hundred-thousand-dollar case.  And what I don't want is excessive filings in cases unnecessarily.  And it -- I find it hard to believe that parties can't agree on a form of pretrial.  And so I'm happy to take this one under advisement and go look at it and then make a ruling as to a pretrial, and we can decide what the parties will enter into at a later date.

MS. CULVER:  Thank you, Your Honor.

MS. GRIFFITH:  Thank you, Your Honor.

THE COURT:  Before the parties leave, I want to know exactly which issues are outstanding.  With -- other than the form of the pretrial, which other dates are at issue, besides discovery?  The mediation deadline, are the parties in agreement?

MS. CULVER:  I think -- I believe their mediation deadline is 180 days after the -- I'm sorry.

THE COURT:  After the answer is filed, right?

MS. CULVER:  I believe that's correct.

MS. GRIFFITH:  Yes.  And we are amenable to 120 days.  We had discussed 180 days in our prior meet-and-confer with defendants' counsel.  And then, when they submitted their proposed case management order, they put 120 days. We're amenable to moving to 120 days on that point.

THE COURT:  Okay.  And what -- so what other issue is there besides the stay of discovery and the form of --

MS. GRIFFITH: Expert --

THE COURT: -- the document?

MS. GRIFFITH: Your Honor, the expert discovery is also an issue. The trust's position is that staggered discovery is standard practice in this Court, and that is what has been approved in the ten other case management orders endorsed by this Court in this action.

We propose expert discovery occurs after the close of fact discovery, so that experts will have a complete factual record to reliably opine on. It is the trust's position that forcing experts to prepare reports while the factual record is still developing may create inefficiency and lead to a cycle of amendments.

MS. CULVER: And I'm happy to discuss that with the trust's counsel, Your Honor.

The -- we proposed a scheduling order. The response back was just no, we're sticking to our form of scheduling order, so we didn't parse through each of the dates.

As I indicated, the main concern was the fact discovery cutoff and the idea that we would need to be pursuing discovery while there's a dispositive motion pending. I suspect we could get to agreement on the other dates. We're not looking to delay this matter unnecessarily. The deadlines set forth in the scheduling order for

litigations are already, I think, fairly aggressive, in terms of -- a six-month discovery period is really not that long of a period.  So I would be happy with the guidance Your Honor has given today, to go back and speak with Ms. Greer, to see if we can agree on deadlines that make sense for everyone.

THE COURT:  I think that would be helpful.

Here's -- you know, the Court may have commented on a few of these.  Most of these are coming to the Court unopposed, they are under certification of counsel, which, if the parties are in agreement with a schedule, I'm not going to interject my position it, it's only when they're brought to me.  I like people to manage their own cases.

That said, I'm not going to get ten cases wag the tail of a hundred adversary proceedings.  So I will look at this, in terms of discovery, and refer it back to the parties.  And if the parties want to discuss other deadlines and agree to them, that's fine; otherwise, I'm happy to issue some dates.

MS. CULVER:  Thank you, Your Honor.

THE COURT:  Okay?  Thank you.

MS. GRIFFITH:  Your Honor?  Your Honor, I would also like to raise -- the other main issue that the trust views as disputed between the competing case management orders is defendants' implementation of a requirement that the trust add a reoccurring status report requirement to the

case management order.

We believe this will be an unnecessary cost and administrative burden on the trust.  The local rules already proscribe a way for either party to promptly seek court intervention if an issue arises, and the trust's position is that is sufficient.  There is no need for a status report obligation to be imposed.

MS. CULVER:  We included that because that was included in the general order, which I thought was --

THE COURT:  Right.  And I -- is that -- and I'll have to go back and actually -- because that's one thing I thought about in these cases, is that there isn't a requirement for a status report, and we always had a quarterly status report requirement.

So I'll look at that, as well, because, in a -- when there is multiple litigations in a case, from a court perspective, in terms of case management, it's important to know what's going on and where matters stand and what may be under advisement, but the Court hasn't been alerted to it, what's settled, what's in mediation, et cetera.  Although the rules have changed, there are a lot of old procedures that are actually very beneficial.

Okay.  Is there anything else I should be looking at with respect to this?

MS. CULVER:  Not from the defendants' perspective,

Your Honor.

THE COURT:  Okay.

MS. GRIFFITH:  No --

THE COURT:  From the --

MS. GRIFFITH:  -- Your Honor.

THE COURT:  -- trust's perspective?

MS. GRIFFITH:  Thank you.

THE COURT:  Okay.  Thank you very much, Ms. Griffith.

MS. CULVER:  Thank you.

THE COURT:  All right.  Anything else, Mr. Detweiler?

MR. DETWEILER:  No, Your Honor.  I think that takes care of today's agenda.  We appreciate your time and your staff, as well, for all their help and assistance.  And that concludes the hearing for today.

THE COURT:  All right.  Great.  Thank you very much.  I will get back to the parties on Stillman.  Okay?  Thank you all.  Have a great day.  We stand adjourned.

MR. DETWEILER:  Thank you, Your Honor.  You, too.

(Proceedings concluded at 11:31 a.m.)

                              *****

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

_____          November 22, 2025

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable

**Schedule 1**

| CASE NAME | ADV. CASE NO. |
|---|---|
| PCT Litigation Trust v. Pine Grove Consulting, Inc. | 25-51056 (JKS) |
| PCT Litigation Trust v. Foris Capital US, LLC f/k/a Watchdog Capital, LLC | 25-51199 (JKS) |
| PCT Litigation Trust v. Cornerstone Global Management, Inc. | 25-51801 (JKS) |
| PCT Litigation Trust v. The Black Wall Street Holdings, Inc. | 25-51804 (JKS) |
| PCT Litigation Trust v. Dapps Platform | 25-51856 (JKS) |
| PCT Litigation Trust v. Switch Reward Card DAO LLC | 25-51944 (JKS) |
| PCT Litigation Trust v. Eco, Inc. | 25-51973 (JKS) |
| PCT Litigation Trust v. 1Konto Inc, 1 Konto LLC | 25-51977 (JKS) |
| PCT Litigation Trust v. Coast Software LLC | 25-51981 (JKS) |
| PCT Litigation Trust v. Global Internet Ventures Pty Ltd., et al | 25-51985 (JKS) |
| PCT Litigation Trust v. Koi Trading Systems Inc. | 25-51986 (JKS) |
| PCT Litigation Trust v. OpenNode Inc. | 25-51988 (JKS) |
| PCT Litigation Trust v. Nonco LLC | 25-51991 (JKS) |
| PCT Litigation Trust v. Midas, Inc. | 25-51994 (JKS) |
| PCT Litigation Trust v. East Goodnews Limited | 25-52011 (JKS) |
| PCT Litigation Trust v. One World Services LLC, et al. | 25-52012 (JKS) |
| PCT Litigation Trust v. Tiki Labs, Inc. | 25-52015 (JKS) |
| PCT Litigation Trust v. Janajri, et al. | 25-52018 (JKS) |
| PCT Litigation Trust v.Merino Martinez | 25-52019 (JKS) |
| PCT Litigation Trust v. Gomez, et al. | 25-52021 (JKS) |
| PCT Litigation Trust v. Womack | 25-52022 (JKS) |
| PCT Litigation Trust v. Alphaflow Inc., et al. | 25-52023 (JKS) |
| PCT Litigation Trust v. APR Travel Services Inc, et al. | 25-52025 (JKS) |
| PCT Litigation Trust v. Jiles, et al. | 25-52026 (JKS) |
| PCT Litigation Trust v. Baily, et al. | 25-52027 (JKS) |
| PCT Litigation Trust v. Ozkilic | 25-52028 (JKS) |
| PCT Litigation Trust v. CrossTower Inc., et al. | 25-52029 (JKS) |
| PCT Litigation Trust v. Lithic Inc. et al. | 25-52030 (JKS) |
| PCT Litigation Trust v. Axcess Limited, et al. | 25-52032 (JKS) |
| PCT Litigation Trust v. Blocktown Technology Limited | 25-52033 (JKS) |
| PCT Litigation Trust v. Bitcoin Solutions Inc. | 25-52034 JKS) |
| PCT Litigation Trust v. Banco Sntander De Negocios Columbia, et al. | 25-52035 (JKS) |
| PCT Litigation Trust v. Summit National Bank | 25-52036 (JKS) |
| PCT Litigation Trust v. Timothy Howard | 25-52037 (JKS) |
| PCT Litigation Trust v. Autonomous Partners, et al. | 25-52038 (JKS) |
| PCT Litigation Trust v. Texas Capital Bank | 25-52039 (JKS) |
| PCT Litigation Trust v. Buczky Payments Inc., et al. | 25-52040 (JKS) |
| PCT Litigation Trust v. Actick (DE) Trading Limited, et al. | 25-52041 (JKS) |
| PCT Litigation Trust v. DiSalvo | 25-52042 (JKS) |
| PCT Litigation Trust v. FXDirect Dealer LLC, et al. | 25-52043 (JKS) |
| PCT Litigation Trust v. Apollo Crypto Market Neutral Fund Ltd, et al. | 25-52044 (JKS) |
| PCT Litigation Trust v. Zhang, et al. | 25-52045 (JKS) |
| PCT Litigation Trust v. Burnett, et al. | 25-52046 (JKS) |

| | |
|---|---|
| PCT Litigation Trust v. Applegate, et al. | 25-52047 (JKS) |
| PCT Litigation Trust v. Avilac Inc., et al. | 25-52048 (JKS) |
| PCT Litigation Trust v. Artela Inc. et al. | 25-52049 (JKS) |
| PCT Litigation Trust v. Circle Internet Financial LLC | 25-52050 (JKS) |
| PCT Litigation Trust v. 5W Public Relations LLC | 25-52051 (JKS) |
| PCT Litigation Trust v. Huobi Global Limited, et al. | 25-52052 (JKS) |
| PCT Litigation Trust v. Beneficiary Pershing LLC | 25-52053 (JKS) |
| PCT Litigation Trust v. Apexpost Limited, et al. | 25-52054 (JKS) |
| PCT Litigation Trust v. Cloudun (HK) Tech Limited, et al. | 25-52055 (JKS) |
| PCT Litigation Trust v. Li Canal Holdingss Limited | 25-52056 (JKS) |
| PCT Litigation Trust v. Reap Technologies Limited | 25-52057 (JKS) |
| PCT Litigation Trust v. WeBuild, VC, LLC | 25-52058 (JKS) |
| PCT Litigation Trust v.ADVSAT, et al. | 25-52059 (JKS) |
| PCT Litigation Trust v. Galaxy Digital Trading Cayman LLC, et al | 25-52060 (JKS) |
| PCT Litigation Trust v. Morgan Stanley | 25-52061 (JKS) |
| PCT Litigation Trust v.AC Holding Limited, et al. | 25-52062 (JKS) |
| PCT Litigation Trust v. Lenk, et al. | 25-52063 (JKS) |
| PCT Litigation Trust v. B2C2 USA, Inc, et al. | 25-52064 (JKS) |

21

**Schedule 2**

| CASE NAME | ADV. CASE NO. |
|---|---|
| PCT Litigation Trust v. Janajri, et al. | 25-52018 (JKS) |
| PCT Litigation Trust v. Merino Martinez | 25-52019 (JKS) |
| PCT Litigation Trust v. Gomez, et al. | 25-52021 (JKS) |
| PCT Litigation Trust v. Womack | 25-52022 (JKS) |
| PCT Litigation Trust v. Alphaflow Inc., et al. | 25-52023 (JKS) |
| PCT Litigation Trust v. APR Travel Services Inc, et al. | 25-52025 (JKS) |
| PCT Litigation Trust v. Baily, et al. | 25-52027 (JKS) |
| PCT Litigation Trust v. Ozkilic | 25-52028 (JKS) |
| PCT Litigation Trust v. CrossTower Inc., et al. | 25-52029 (JKS) |
| PCT Litigation Trust v. Lithic Inc. et al. | 25-52030 (JKS) |
| PCT Litigation Trust v. Axcess Limited, et al. | 25-52032 (JKS) |
| PCT Litigation Trust v. Blocktown Technology Limited | 25-52033 (JKS) |
| PCT Litigation Trust v. Applegate, et al. | 25-52047 (JKS) |
| PCT Litigation Trust v. Circle Internet Financial LLC | 25-52050 (JKS) |
| PCT Litigation Trust v. Huobi Global Limited, et al. | 25-52052 (JKS) |
| PCT Litigation Trust v. Beneficiary Pershing LLC | 25-52053 (JKS) |
| PCT Litigation Trust v. Apexpost Limited, et al. | 25-52054 (JKS) |
| PCT Litigation Trust v. ADVSAT, et al. | 25-52059 (JKS) |
| PCT Litigation Trust v. AC Holding Limited, et al.<br>    **Objection Received: Adv. Pro. No. 7** | 25-52062 (JKS) |
| PCT Litigation Trust v. Lenk, et al. | 25-52063 (JKS) |

**Schedule 3**

| CASE NAME | ADV. CASE NO. |
|---|---|
| PCT Litigation Trust v. Bitcoin Solutions Inc. | 25-52034 JKS) |
| PCT Litigation Trust v. Banco Sntander De Negocios Columbia, et al. | 25-52035 (JKS) |
| PCT Litigation Trust v. Summit National Bank | 25-52036 (JKS) |
| PCT Litigation Trust v. Timothy Howard | 25-52037 (JKS) |
| PCT Litigation Trust v. Autonomous Partners, et al. | 25-52038 (JKS) |
| PCT Litigation Trust v. Texas Capital Bank | 25-52039 (JKS) |
| PCT Litigation Trust v. Buczky Payments Inc., et al. | 25-52040 (JKS) |
| PCT Litigation Trust v. Actick (DE) Trading Limited, et al. | 25-52041 (JKS) |
| PCT Litigation Trust v. DiSalvo | 25-52042 (JKS) |
| PCT Litigation Trust v. FXDirect Dealer LLC, et al. | 25-52043 (JKS) |
| PCT Litigation Trust v. Apollo Crypto Market Neutral Fund Ltd, et al. | 25-52044 (JKS) |
| **Objection Received: Adv. Pro. No. 5** | |
| PCT Litigation Trust v. Zhang, et al. | 25-52045 (JKS) |
| PCT Litigation Trust v. Burnett, et al. | 25-52046 (JKS) |
| PCT Litigation Trust v. Avilac Inc., et al. | 25-52048 (JKS) |
| PCT Litigation Trust v. Artela Inc. et al. | 25-52049 (JKS) |
| PCT Litigation Trust v. 5W Public Relations LLC | 25-52051 (JKS) |
| PCT Litigation Trust v. Cloudun (HK) Tech Limited, et al. | 25-52055 (JKS) |
| PCT Litigation Trust v. Li Canal Holdingss Limited | 25-52056 (JKS) |
| PCT Litigation Trust v. Reap Technologies Limited | 25-52057 (JKS) |
| PCT Litigation Trust v. WeBuild, VC, LLC | 25-52058 (JKS) |

23